JOHN GOUGH, PLAINTIFF, v. MATTHEW G. BAILEY, DE-
FENDANT.

Submitted January 16, 1925—Decided October 15, 1925—Filed
November 20, 1925.

Corporations—Purchase of Shares—Plaintiff's Assignors Gave
Defendant Money to Purchase Shares—Money Invested, But
Certificates Never Delivered—Defendant Alleges Fraudulent
Conduct of Company's Officer, and Had Already Obtained
Judgment Holding Him Entitled to Shares—His Position, as
Alleged Agent For Plaintiff's Assignors, Not Set Up in That
Suit—Was Defendant Charged With the Purchase of Shares
or Was He Merely An Agent to Invest Plaintiff's Funds?—
Held, to be Chargeable With Shares—Company Became Bank-
rupt and Judgment Against Defendant.

On defendant's rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER
and KATZENBACH.

For the plaintiff, *Arthur T. Dear.*

For the defendant, *Albert R. Jube* and *Conover English.*

PER CURIAM.

This case is presented on a defendant's rule to show cause.
The plaintiff, John F. Gough, is the assignee of the claims
of four men by the name of Caldwell, Ober, Walsh and
Slaughter, each of whom paid $1,500 to the defendant,
Bailey, to procure, as the plaintiff contended, stock in a com-
pany to be formed under the laws of the State of New York
for the purpose of manufacturing milk chocolate. The de-
fendant and the four assignors were interested in a com-
pany known as the Brown & Bailey Company. This com-
pany was engaged in the milk business. The defendant
represented to the four gentlemen mentioned that a Mrs.
Haaren, of Warwick, New York, had a process for manu-
facturing milk chocolate and was about to erect a plant near
the Brown & Bailey Company's plant. This would create

another buyer of milk in this district which it was thought might be detrimental to the interests of the Brown & Bailey Company. The defendant suggested to his four associates that they take an interest in the company to be formed for the purpose of making milk chocolate. The four gentlemen mentioned paid to Bailey $6,000 (each $1,500) for the purpose of buying shares of the capital stock of this company. The company was incorporated. It was at first known as the Haaren Special Milk Products Corporation. Afterwards the corporate name was changed to the Colleen Products Company. The company was not successful and became bankrupt. The four gentlemen mentioned never obtained certificates of the capital stock of the company. They thereupon assigned their claims to the plaintiff, who instituted suit against Bailey for the $6,000, upon the theory that Bailey had converted the money to his use.

The real question at issue was what the contract between the parties was, whether it was a contract by which for the money paid by the four mentioned they were to get shares of the capital stock of the company, afterwards known as the Colleen Products Corporation, or whether they made Bailey their agent for the purpose of investing their money in the business as he might think proper. At the trial the complaint was amended with the consent of the plaintiff's attorney, so that the defense could be interposed that Bailey was the agent of the assignors of the plaintiff, and that his agency permitted him to invest the money in the business as well to purchase share of the capital stock of the company. This amendment enabled Bailey to show that he had advanced some $6,300 to the corporation. His contention further was that he was unable to get the shares of the capital stock of the company because of the fraudulent conduct of a man by the name of Barnett, who was connected with the new enterprise. The trial judge submitted the case to the jury, telling them that the question for their decision was for what purposes did Bailey receive the money. If the money was paid to him for capital stock then he was obliged to use the money to buy stock, and he had no right to pay

it to the company for any other purpose. The trial judge told the jury that if they found that it was paid to Bailey to put into the company, and he did put it into the company, then the plaintiff would not be entitled to a verdict. The jury found a verdict in favor of the plaintiff for $6,000.

The chief point pressed under the rule is that the verdict is against the weight of the evidence. We are not impressed with the argument made in behalf of the defendant that the verdict is against the weight of the evidence. It may have the appearance of a hard case, because, if the defendant had procured for his four associates the capital stock, the stock would now be valueless. On the other hand, we are convinced by the testimony that the contract was that the money was to be paid to Bailey to purchase capital stock. Bailey had therefore no right to let the money out of his hands and into the treasury of the company without the delivery to him of shares of the stock. We gather from the testimony that Bailey intended to get the stock himself from the company and then to transfer to his four associates the number of shares to which each would be entitled. Bailey commenced a suit against Barnett and the Colleen Products Company for the issuance of stock to himself. The judgment in this action was that Bailey was entitled to one hundred and fourteen and eighty-nine hundredths shares of the capital stock. In this suit Bailey appears not to have taken the position that he was acting as the agent of his four associates. This suggests that the defense of Bailey's agency in the present action was an afterthought. We have reached the conclusion that the verdict is not against the weight of the evidence.

The defendant insists that the trial court erred in refusing to permit the defendant's counsel to ask a Mr. Caldwell the following question: "Do you know what property the Colleen company owns at the present time?" The trial judge, on his own motion, said that he was not going to permit the question to be asked on cross-examination. It was immaterial as to what the Colleen Products Company owned. This was a question not involved in the contro-

versy, and the trial judge ruled properly in excluding the testimony. The same question was asked of Mr. Ober. For the same reason it was proper for the trial judge to overrule the question.

The defendant contends that the court's refusal to dismiss certain counts of the complaint was error. The ground of the motion was the insufficiency of the facts proven. We cannot see that the trial judge erred in overruling this motion. The defendant was in no way harmed by the court's ruling.

The defendant further claims that there was no allegation in the complaint of the assignments of the claims sued on to the plaintiff. A reference to the complaint shows that this claim is not well founded. The assignments were also proven and offered in evidence. One of them is printed as an exhibit (at *p.* 208).

Upon a review of the entire case we have reached the conclusion that the defendant had a fair trial and that the rule to show cause should be discharged.

The rule is, accordingly, discharged.